DOMENGEAUX, Judge.
This is a workmen’s compensation case wherein the defendant, Ashy Construction Company, appeals a district court judgment awarding plaintiff, Joseph E. Soileau, damages for permanent and total disability.
The evidence discloses that plaintiff suffered an injury to his lower back in September, 1967, while carrying out his duties as a roustabout with Ashy. Specifically, he was engaged in lifting an oil pump weighing some 50 pounds when he felt a sudden burning pain in his lower back. The pain persisted and proved disabling, so two days later plaintiff consulted Dr. James McCarthy, a general practitioner in Opelousas, Louisiana.
Dr. McCarthy examined plaintiff and arrived at a diagnosis of acute severe lumbar Sacral strain, with possible herniated nucleus pulposus. He hospitalized plaintiff for several days during which time he was placed in traction. He continued to treat plaintiff with muscle relaxants and a lumbar sacral back support and arranged for him to have physiotherapy. The doctor stated that plaintiff would, at times, seem to improve and soon therafter he would show symptoms of activation, a pattern consistent with a ruptured disc. On May 24, 1968, the last time that he saw plaintiff, it was his opinion that plaintiff could return to work, but that he would experience some difficulty because of the long period of disuse. He did not, at that time, feel that plaintiff had a ruptured disc but he did want to see plaintiff again some weeks after his return to work to see what effect his doing so had on his condition.
While plaintiff was in the hospital Dr. McCarthy had him examined by Dr. Robert Luke Bordelon, an orthopedic surgeon. Dr. Bordelon’s examination at that time resulted in an opinion that plaintiff’s difficulty was caused by an early and minimal protrusion of a disc in the lower lumbar area and most probably at the lumbosacral level. He again saw plaintiff on December 11, 1967 in his office at which time he again examined plaintiff. Again the doctor felt that plaintiff had a minimal disc protrusion and that it was caused in the accident of September, 1967, but he preferred to treat him conservatively to see what would develop, rather than subject him to a myelogram at that time. The myelogram was per *919 formed on April 2, 1968 during a second period of hospitalization which plaintiff underwent from April 1, 1968 through April 5, 1968, and resulted in negative findings. Dr. Bordelon testified, however, that the myelogram is only 85% accurate in detecting disc ruptures, and that he has had several cases in which ruptured discs were found in patients who had negative myelo-grams. In late April, 1968, a discogram was performed at the Ochsner Clinic in New Orleans which also produced negative results. Dr. Bordelon expressed the opinion that discograms are not very accurate and are not good diagnostic tests. Finally on May 20, 1968, Dr. Bordelon discharged plaintiff with his diagnosis being the probability of a very minor ruptured disc. The next and last time this physician saw plaintiff was on May 27, 1969, at which time he was examined at the request of his attorney. The doctor’s diagnosis on that occasion remained the same and he did not opine that plaintiff could do the work of a roustabout without pain.
On February 29, 1968 plaintiff consulted Dr. John D. Jackson, a neurosurgeon from New Orleans. The doctor examined him and concluded that he might have a bulging disc and in view of this possibility and of his long period of disability he recommended that a lumbar myelogram be performed. Accordingly plaintiff was hospitalized at the Ochsner Foundation Hospital from April 23, 1968 to April 26, 1968 during which time a myelogram and a discogram were performed. Both of those tests were negative and based on those results Dr. Jackson, who considered the tests to be far more accurate than did Dr. Bordelon, concluded that plaintiff did not have disc disease. The next time Dr. Jackson saw plaintiff, on March 5, 1970, he found a decreased left Achilles reflex, and this new finding induced him to opine that at that time plaintiff did have a disc problem. He did not, however, connect the disc problem to the injury complained of, primarily because of the negative results of the aforementioned tests and because of the length of time between the accident and the appearance of symptoms of a disc injury. In this connection we note that Dr. Bordelon thought the myelogram to be only 85% accurate and was even more skeptical of the discogram. Additionally, on cross examination, Dr. Jackson admitted that the new symptoms could well have appeared much earlier than March 5, 1970, since he had not seen plaintiff since April 26, 1968, thus the length of time between the accident and the appearance of definitive symptoms could be considerably less than that referred to by Dr. Jackson.
On May 15, 1968, plaintiff consulted Dr. Daniel Buller, a general surgeon from Opel-ousas, with complaints of pain in the lum-bosacral spine. Upon examining plaintiff, this physician suspected a disc problem and because of that suspicion, and because of the extreme distress that plaintiff was in, he referred him to Dr. Luke Bordelon for additional tests falling within the latter’s specialty.
Plaintiff did not return to Dr. Buller’s office until October 6, 1969 at which time he was seen by Dr. Buller’s replacement, he being away on vacation. Dr. Buller did see plaintiff on October 15, 1969 and treated him regularly since that time. In Dr. Bul-ler’s opinion, plaintiff has a herniated disc which was caused by the accident of September, 1967. He did not think it at all extraordinary for a person to injure a disc and not show any neurological evidence thereof for some time. He also considered it impossible for plaintiff to perform heavy manual, labor if his diagnosis was correct.
The only other physician who testified was Dr. Lloyd H. Boulet, Jr., a general practitioner who, inter alia, examined plaintiff in connection with an application for employment on August 7, 1968. This was a routine pre-employment physical examination and was based primarily on the history given by plaintiff. Plaintiff did not mention any low back difficulties and only a cursory examination of his back was performed, therefore, the fact that this physi *920 cian approved plaintiff for the work of a roustabout is of little or no value in deciding this case. Plaintiff visited Dr. Boulet on other occasions, but for ailments unrelated to the issues herein presented.
The plaintiff himself testified that he had felt a constant pain in the area of his lower back since September of 1967, when he injured his back while lifting a heavy oil pump. He admitted that he had been less than candid with Dr. Boulet regarding his back ailment but explained his action as being motivated by his desire to obtain a position with Hercules Drilling Corporation, as his family was in necessitous circumstances and he, their only provider, had not worked for nearly one year.
Defendant makes much of plaintiff’s employment with Hercules, and argues that it is proof that plaintiff could not have had a disc injury during the time involved. It introduced the records of Hercules which show that plaintiff worked for that company from August 8, 1968 through May IS, 1969 and that he was a steady worker in the sense that he was not absent from work. Plaintiff testified, however, that these records are incorrect and that in fact he was frequently absent from work, did not always work when he was present, and did only light work when he worked at all. He explained that his boss, Alex Stoute, Jr., was a long-time friend who knew of his condition but nevertheless took him into his crew because of his economic difficulties. He said that he was assigned only light duties when he worked and that when he missed work, other men took his place, he paid them out of his own pocket, and Mr. Stoute turned in the time as being plaintiff’s.
Mr. Stoute was called and he corroborated the plaintiff’s account of his period of employment with Hercules. Mr. Stoute testified that he had made out most of the reports contained in the aforementioned records personally and that he had, on numerous occasions, falsely stated therein that plaintiff had been on the job. He said that he has been in the oil fields for 30 years and that he knows that sort of thing to be a frequent practice in the business. He also confirmed that plaintiff did only light work and sometimes no work at all. Additionally two other members of plaintiff’s work crew were called and testified along the same lines.
Further corroboration of plaintiff’s disability was elicited from his wife who testified regarding his continuous pain.
While we do not condone the deception practiced on Hercules by its employees, we are of the opinion that their testimony in connection with plaintiff’s employment is destructive of any value that the fact of that employment may have had to defendant’s position. The circumstances under which plaintiff maintained his position with Hercules clearly were not inconsistent with his alleged difficulty.
The issue then, is basically one of fact revolving around the question of whether or not plaintiff was totally and permanently disabled, within the meaning of our workmen’s compensation law, by the accident of September, 1967. In view of the foregoing evidence we cannot say that the trial judge who saw and heard the various witnesses, erred manifestly in deciding the issue in the affirmative and we must therefore permit his judgment to stand.
Accordingly the judgment of the trial court is affirmed at defendant-appellant’s cost in both courts.
Affirmed.